**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**101 E. Front, Suite 401**
**Missoula, MT  59802**
**Phone:  (406) 542-8851**
**FAX:  (406) 542-1476**
**E-mail:  Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 25-32-M-DWM** |
| Plaintiff, | |
| vs. | **OFFER OF PROOF** |
| **BRADY ALLEN BATISTA,** | |
| Defendant. | |

1

## THE CHARGE

The defendant, BRADY ALLEN BATISTA, is charged by indictment with nine counts of Wire Fraud, in violation of 18 U.S.C. § 1343, eight counts of Money Laundering, in violation of 18 U.S.C. § 1957, and seven counts of Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 2.

## PLEA

The defendant, BRADY ALLEN BATISTA, will enter a voluntary plea to counts 1, 10, and 20 of the indictment. The motion for change of plea filed with the Court represents, in the government's view, the most favorable disposition of the case against the defendant. *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## ELEMENTS

The defendant will plead guilty because the defendant is guilty of the charge contained in count 1 of the indictment. In pleading guilty to count 1, the defendant acknowledges that:

> **First**, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
>
> **Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
>
> **Third**, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and,

**Fourth**, the defendant used, or caused to be used, a wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant will also plead guilty because the defendant is guilty of the charge contained in count 10 of the indictment. In pleading guilty to count 10, the defendant acknowledges that:

**First**, the defendant knowingly engaged or attempted to engage in a monetary transaction;

**Second**, the defendant knew the transaction involved criminally derived property;

**Third**, the property had a value greater than $10,000;

**Fourth**, the property was, in fact, derived from wire fraud; and,

**Fifth**, the transaction occurred in the United States.

The defendant will also plead guilty because the defendant is guilty of the charge contained in count 20 of the indictment. In pleading guilty to count 20, the defendant acknowledges that:

**First**, the defendant knowingly used and possessed, without legal authority, a means of identification of another person;

**Second**, the defendant knew that the means of identification belonged to a real person; and,

**Third**, the defendant did so during and in relation to a felony violation of wire fraud.

## PENALTY

Count 1 of the indictment charges Wire Fraud, in violation of 18 U.S.C. § 1343, which carries a maximum term of imprisonment of 20 years, a $250,000 fine, up to three years supervised release, and a $100 special assessment.

Count 10 of the indictment charges Money Laundering, in violation of 18 U.S.C. § 1957, which carries a maximum term of imprisonment of 20 years, a $250,000 fine, up to three years supervised release, and a $100 special assessment.

Count 20 of the indictment charges Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, which carries a mandatory minimum two years of imprisonment consecutive to count 1, a $250,00 fine, up to one year of supervised release, and a $100 special assessment.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

Brady Allen Batista fraudulently claimed to victims he could obtain interests in real property, pontoon boats, F1 racing tickets, and Super Bowl tickets. According to Batista, the money his victims spent on these ventures would result in lucrative investments and returns of money. To cover up and perpetuate the fraud, Batista would take money from one victim and use it to repay another victim, in

whole and in part, to lull victims into continuing with their investments and delay any reporting of the fraud.

### A. Count 1 – Wire Fraud

In March 2023, Batista contacted John Doe 1 about purchasing a pontoon boat from John Doe 2. On March 8, 2023, John Doe 1 wired Batista $45,000.00 to purchase the pontoon boat from John Doe 2. The boat never arrived, and John Doe 1 eventually contacted John Doe 2 about the delay in delivering the pontoon boat. John Doe 2 explained he never had a pontoon boat for sale, meaning Batista fraudulently claimed he would use John Doe 1's money to purchase a pontoon boat from John Doe 2. In truth and reality, Batista had a bank account balance of $0.86 prior to receiving the $45,000.00 from John Doe 1. The transfer of money from John Doe 1 to Batista generated an interstate wire.

### B. Count 10 – Money Laundering

The following day, on March 9, 2023, Batista engaged in a monetary transaction by transferring $30,000.00 to his father from one bank account to another bank account, all of which occurred in the United States. The money was derived from wire fraud, as explained above in count 1, because Batista did not use the money to purchase a pontoon boat as originally claimed.

///

///

### C. Count 20 – Aggravated Identity Theft

In October 2023, Batista again approached John Doe 1 and offered an investment in a condominium located in Wailea, Hawaii. Batista fraudulently claimed the property was owned by John Doe 2 and Jane Doe 1. Batista manufactured communications from John Doe 2 and Jane Doe 1, making it appear as if they indeed owned the property. No such ownership existed.

Batista also claimed John Doe 3, a prominent Missoula lawyer, drafted and created an agreement for John Doe 1 to sign. No such representation existed. Batista fraudulently used the letterhead of John Doe 3, including John Doe 3's name. When interviewed, John Doe 3 explained he never represented Batista in the land transaction as Batista claimed. Batista knew John Doe 3 was a real person, which is why Batista used his identity to make the agreement appear legitimate.

The transfer of the agreements, communications, and money generated interstate wires.

///

///

///

///

///

The United States would have presented this evidence through the testimony of law enforcement and lay witnesses.

DATED this 15th day of October, 2025.

                                            KURT G. ALME
                                          United States Attorney

                                          */s/ Ryan G. Weldon*
                                          RYAN G. WELDON
                                          Assistant U.S. Attorney